**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TYLUS ALLEN,

            Plaintiff,

v.

MITCHELL LORENZ, M.D., et al.,

            Defendants.

No. 19-cv-07904

Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Oak Lawn Detectives stopped Plaintiff Tylus Allen (Allen) for alleged traffic violations while he was driving in Oak Lawn. The detectives smelled marijuana inside of Allen's vehicle, and summoned Jason Tudryn (Officer Tudryn), an officer with the Burbank Police Department, to the scene to conduct a narcotics dog sniff of Allen's vehicle, with the assistance of his K-9 partner, Lary. Allen was taken to the Oak Lawn Police Department during Officer Tudryn's vehicle search. Allen was later taken to Christ Advocate Hospital on suspicion that he had narcotics in his rectum. At the hospital, Dr. Mitchell Lorenz (Dr. Lorenz), under the supervision of Dr. Laura Napier (Dr. Napier), performed a digital rectal examination and ordered an x-ray to determine whether there were any foreign bodies in Allen's rectum. No drugs were discovered.

Allen sued Advocate Health and Hospital Corporation (Advocate), Dr. Lorenz, and Dr. Napier, (collectively, the Advocate Defendants), and Officer Tudryn asserting

claims of unreasonable search of his person and vehicle under 42 U.S.C. § 1983 (Section 1983), and battery under Illinois law.[1]

Officer Tudryn and the Advocate Defendants move for summary judgment under Federal Rule of Civil Procedure 56. R.[2] 87, Tudryn Mot. Summ. J.; R. 84, Advocate Defs.' Mot. Summ. J. For the reasons that follow, Officer Tudryn's motion for summary judgment is granted, and the Advocate Defendants' motion for summary judgment is denied.

## Background

The following facts are set forth favorably to Allen, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Allen's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (cleaned up)[3]; *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (cleaned up) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details

---

[1]Allen also sued the Village of Oak Lawn and several Oak Lawn police officers in his Complaint. R. 45, First Am. Compl. However, the claims against the Village of Oak Lawn and those police officers have been dismissed. R. 119, Stip. of Dismissal; R. 120, 06/06/2022 Minute Entry.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

all material undisputed facts and notes where facts are disputed, to the extent the disputed facts are supported by record evidence.

## I.    Law Enforcement Stop and Search

On December 2, 2018, Oak Lawn Detectives Sean Heilig and Michael McNeela (the Arresting Officers) pulled Allen over while he was driving a car in Oak Lawn, Illinois. Advocate Defs.' SOF[4] ¶ 7. Allen admits that he was pulled over for speeding and traffic violations. Pl.'s Resp. Tudryn SOF ¶ 25. Detective Heilig ran Allen's license plate and discovered Allen had previously fled the scene of a traffic stop with the Evergreen Park Police Department. Tudryn SOF ¶ 26. Allen denies that he was involved in any traffic stop where he fled the scene, however, he does not deny that the search of his license plate revealed that result to Detective Heilig. Pl.'s Resp. Tudryn SOF ¶ 26; *see* R. 88-4, Heilig Dep. Tr. at 24: 10–18. The Arresting Officers asked Allen to exit his vehicle. Tudryn SOF ¶ 27. Allen did so and Detective Heilig

---

[4]Citations to the parties' briefs are identified as follows: "Tudryn Mot. Summ. J." for Tudryn's Motion for Summary Judgment; "Tudryn Memo. Summ. J." for Tudryn's Memorandum of Law in support of its Motion for Summary Judgment (R. 89); "Tudryn SOF" for Tudryn's Local Rule 56.1 Statement of Undisputed Facts (R. 88); "Pl.'s Resp. Tudryn SOF" for Allen's Response to Tudryn's Statement of Undisputed Facts (R. 103); "Pl.'s Tudryn PSOAF" for Allen's Local Rule 56.1 Statement of Additional Facts as to Tudryn (R. 102); "Pl.'s Tudryn Resp." for Allen's Response to Tudryn's Motion for Summary Judgment (R. 101); "Tudryn Resp. PSOAF" for Tudryn's Response to Allen's Statement of Additional Facts as to Tudryn (R. 107); "Tudryn Reply" for Tudryn's Reply in support of his Motion for Summary Judgment (R. 117); "Advocate Defs.' Mot. Summ. J." for Advocate's Motion for Summary Judgment; "Advocate Defs.' Memo. Summ. J." for Advocate Defendants' Memorandum of Law in support of its Motion for Summary Judgment (R. 85); "Advocate Defs.' SOF" for Advocate's Local Rule 56.1 Statement of Undisputed Facts (R. 86); "Pl.'s Resp. Advocate SOF" for Allen's Response to Advocate's Statement of Material Facts (R. 100); "Pl.'s Advocate PSOAF" for Advocate's Local Rule 56.1 Statement of Additional Facts (R. 99); "Pl.'s Advocate Resp." for Advocate's Response to Allen's Motion for Summary Judgment (R. 98); "Advocate Defs.' Resp. PSOAF" for Advocate's Response to Allen's Statement of Additional Facts as to Advocate (R. 107); "Advocate Defs.' Reply" for Advocate Defendants' Reply in support of its Motion for Summary Judgment (R. 105).

conducted a protective pat-down search of Allen while he was standing next to the driver's side door of the car. *Id.* ¶¶ 8–9; Pl.'s Resp. Tudryn SOF ¶ 27. The Arresting Officers then brought Allen to the back of the car and performed a second search of Allen. Tudryn SOF ¶ 9; Pl.'s Resp. Tudryn SOF ¶ 27. Detective Heilig testified that he smelled marijuana inside Allen's vehicle. Tudryn SOF ¶ 28. Whether Allen consented to the search of his vehicle is disputed. Pl.'s Resp. Tudryn SOF ¶ 29; Pl.'s Tudryn SOAF ¶ 5. However, Allen does not deny that Detective Heilig requested help from a K-9 patrol officer. Pl.'s Resp. Tudryn SOF ¶¶ 19, 29.

Officer Tudryn was not involved in the initial traffic stop of Allen's vehicle by the Arresting Officers. Pl.'s Resp. Tudryn SOF ¶¶ 19–20. Officer Tudryn was called to the scene approximately ten minutes after the stop at the request of the Arresting Officers to conduct a narcotics dog sniff search of Allen's vehicle, and he proceeded to search Allen's vehicle with his K-9 officer, Lary. *Id.* ¶ 11; Tudryn SOF ¶ 12. Officer Tudryn has been employed as a K-9 patrol officer for the Burbank Police Department with Lary for the past nine years. Pl.'s Resp. Tudryn SOF ¶ 16. Lary is trained to alert to the presence of narcotics. *Id.* ¶ 17. Both Officer Tudryn and Lary are certified by the Illinois Law Enforcement Training and Standards Board, and the Chicago Police Department, in narcotics detection and patrol. *Id.* ¶ 18.

Officer Tudryn did not know whether Allen consented to the search of his vehicle and did not ask Allen whether he had consented. Tudryn's Resp. PSOAF ¶¶ 7–8. Officer Tudryn and Allen dispute whether one of the Arresting Officers communicated the details of the traffic stop or its justification to Officer Tudryn. *See*

4

Pl.'s Tudryn PSOAF ¶ 9; Tudryn's Resp. PSOAF ¶ 9. Upon review of the cited-to testimony of Detective McNeela, it is supported that Detective McNeela testified that one of the officers would have talked to Officer Tudryn to convey the information they had before he deployed his dog, although Detective McNeela could not recall which officer conveyed that information. *See* R. 86-5, McNeela Dep. Tr. at 45: 15–23. This is consistent with Detective Heilig's testimony. Tudryn SOF ¶ 30; *see* Heilig Dep. Tr. at 144: 13–18.

Allen was removed from the scene and taken to the Oak Lawn Police Department during Officer Tudryn's search of the vehicle. Pl.'s Resp. Tudryn SOF ¶ 13. Allen did not see Officer Tudryn after he left the scene, and it is undisputed that the Arresting Officers conducted searches of Allen's person prior to Officer Tudryn arriving on scene, and Allen did not have any interaction or communication with Officer Tudryn. *Id.* ¶¶ 14–15. It is also undisputed that Officer Tudryn and his K-9 partner, Lary, did not search Allen himself. *Id.* ¶ 24.

Officer Tudryn directed Lary to sniff the exterior of Allen's car for the presence of narcotic odors. Tudryn SOF ¶ 22. Allen disputes whether Lary alerted to narcotic odors while sniffing the exterior of Allen's vehicle. Officer Tudryn asserts that Lary did alert (*id.*), whereas Allen contends that Officer Tudryn did not recall whether Lary had, in fact, alerted during the dog sniff of the exterior of the vehicle. Pl.'s Resp. Tudryn SOF ¶ 22. Officer Tudryn then directed Lary to search the interior of Allen's car. Tudryn SOF ¶ 23. Officer Tudryn and Allen also dispute whether Lary alerted to the presence of narcotic odors during the interior search of Allen's car. *Id.*; Pl.'s Resp.

Tudryn SOF ¶ 23. Upon review of the cited-to deposition testimony, Officer Tudryn's statement of fact that Lary alerted or "indicated" (terms Tudryn maintains are analogous) for the presence of narcotic odors during the K-9 search of the vehicle is supported, although Officer Tudryn did not recall the specific nature of the alert (e.g. Lary sitting down or laying outside of the car, etc.). *See* Tudryn SOF ¶ 23; Tudryn Resp. PSOAF ¶¶ 12–13; R. 88-1, Tudryn Dep. Tr. at 18: 22–20: 22; 22: 20–23: 4; 21: 12–17; 22: 20–23: 8; 23:17–24:8; 24:12–17; 38:21–39:2. Officer Tudryn testified as to Lary's alerting behaviors, which include (1) sitting down, (2) laying down, (3) freezing and staring/pointing, and (4) standing and freezing. Tudryn Resp. PSOAF ¶ 11. Officer Tudryn also testified that Lary alerted to several areas outside of Allen's vehicle (the back driver side and passenger side doors), and alerted in the interior of the vehicle, by "point[ing] to that area and stick[ing] around that area." Tudryn SOF ¶¶ 22–23; Tudryn Dep. Tr. at 19: 22–20: 19; 22:8–23:8.

Regarding the results of the search of his vehicle, Allen contends no narcotics were found in his vehicle. *See* Pl.'s Tudryn PSOAF ¶ 14. Conversely, Officer Tudryn maintains that cannabis was recovered from his vehicle. *See* Tudryn Resp. PSOAF ¶ 14. The record reveals that small amounts of cannabis were recovered from Allen's vehicle, but the amounts were small enough not to be considered evidence, and were not inventoried. *See* Heilig Dep. Tr. at 43: 9–44: 5.

## II.    Medical Examination at Advocate

Allen was arrested and transported to the Oak Lawn Police Department for processing. Advocate Defs.' SOF ¶ 10. The Arresting Officers became concerned that

6

Allen had drugs in his rectum. *Id.* ¶¶ 10, 12. Allen told the Arresting Officers that he did not have any drugs in his person. Pl.'s Resp. Advocate SOF ¶ 12. Nevertheless, Allen was told that he would be taken to the hospital "just to check it out." Advocate Defs.' SOF ¶13. In the Advocate Defendants' Statement of Facts, they assert that Sergeant Sucharewski then spoke to Allen about the officers' concern, and that Allen requested to be taken to the hospital. *Id.* ¶ 14. Allen, on the other hand, testified that he never asked to go to the hospital. Pl.'s Resp. Advocate SOF ¶ 14. Allen was then transported to Advocate by an ambulance and escorted into the emergency room by paramedics. *Id.* ¶ 15.

At Advocate, Dr. Lorenz and Dr. Mitchell were working in the Emergency Department when Allen was brought for an examination. Advocate Defs.' SOF ¶ 16. Dr. Lorenz was a senior resident under the supervision of Dr. Napier. *Id.* ¶18. Detective McNeela conveyed the Arresting Officers' concerns about Allen secreting drugs in his rectum to the doctors in the emergency room. *Id.* ¶ 12. Dr. Napier spoke with Allen prior to the examination, and asked him if he had any drugs in his person, which Allen denied. *Id.* ¶ 20.

Dr. Lorenz and Dr. Napier testified that the Oak Lawn Police Department did not direct nor request the medical examination of Allen that followed. Advocate Defs.' SOF ¶¶ 29, 45. The medical records reflect that the police conveyed their concerns about Allen stashing drugs in his rectum to the medical staff. Pl.'s Advocate PSOAF ¶ 2; R. 100-1, Medical Records at 3. Dr. Lorenz testified that the medical examination of Allen that followed had a medical purpose to rule out a medical emergency.

Advocate Defs.' SOF ¶ 22. Allen denies that there was a medical emergency, given that he expressed to the medical staff that he did not have any drugs in his rectum and did not exhibit any symptoms of having drugs in his rectum. Pl.'s Resp. Advocate Defs.' SOF ¶ 21. Allen further contends that his medical records from Advocate indicate that he was "well-appearing and asymptomatic." *Id.*

Allen and the Advocate Defendants disagree as to how the medical examination unfolded. While the Advocate Defendants state that there were no police present during the examination, Allen testified that there were three police officers in the room while Dr. Lorenz performed the examination. Advocate Defs.' SOF ¶ 23; Pl.'s Resp. Advocate SOF ¶ 23. Another point of dispute is the issue of consent. Dr. Lorenz testified that prior to performing the digital rectal examination, he told Allen that while he did not need to consent to the rectal exam, having drugs in his rectum could be life threatening. Advocate Defs.' SOF ¶ 46. Allen, according to the Advocate Defendants, agreed to the examination. *Id.* ¶¶ 24–27, 29–30, 46–47. Dr. Lorenz and Dr. Napier testified that they recorded Allen's consent in their medical records. *Id.* ¶¶ 46–47. However, the Advocate Defendants do not point to any records memorializing consent from Allen for the medical examination. *See id.* Conversely, Allen denies consenting to any examination by Dr. Lorenz or Dr. Napier. Pl.'s Resp. Advocate SOF ¶¶ 24–27, 29–30, 46–47. Last, the parties disagree as to whether Allen was handcuffed during the examination. According to Dr. Lorenz, Allen was not handcuffed during the examinations. Advocate Defs.' SOF ¶ 23. Allen denies this statement of fact. Pl.'s Resp. Advocate SOF ¶ 23.

After the completion of the digital rectal examination, Allen was taken for an abdominal x-ray. Advocate Defs.' SOF ¶ 48. After the completion of the rectal examination and x-ray, both of which were negative, Allen was released back into police custody. Pl.'s Resp. Advocate Defs.' SOF ¶¶ 32, 51. Allen testified that following the digital rectal examination, he was in pain for a week. *Id.* ¶ 35. Both Dr. Napier and Dr. Lorenz testified that the care and treatment of Allen was consistent with the standard of care. *Id.* ¶¶ 54–55. Both Dr. Lorenz and Dr. Napier were employed by Advocate, and acting within the scope of their employment in evaluating and treating Allen. *Id.* ¶ 56.

Allen subsequently filed suit against Officer Tudryn and the Advocate Defendants, among others. Allen asserts the following claims against Officer Tudryn: unreasonable search of his person (Count I) and unreasonable search of his vehicle (Count II). Allen asserts the following claims against Advocate, Dr. Napier, and Dr. Lorenz: unreasonable search (Count I) and a state law claim for medical battery (Count IV). Officer Tudryn and the Advocate Defendants' motions for summary judgment are both before the Court. *See* Advocate Defs.' Mot. Summ. J.; *see* Tudryn Mot. Summ. J.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled

to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

The Court first addresses Officer Tudryn's motion for summary judgment on Allen's unreasonable search claims against him (Count I and II), and then turns to the Advocate Defendants' motion for summary judgment on Allen's unreasonable search and medical battery claims against them (Count I and Count IV).

### I.   Unreasonable Search of Allen's Person – Officer Tudryn (Count I)

Section 1983 provides that a person may not be deprived of any constitutional right by an individual acting under color of state law. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). To state a Section 1983 constitutional claim, a plaintiff must show

that he or she was "deprived of a right secured by the Constitution or federal laws, by a person acting under color of law." *Thurman v. Vill. Of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. "The Fourth Amendment protects two types of expectations, one involving searches and the other seizures." *Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992) (cleaned up).

Officer Tudryn argues that he is entitled to summary judgment because there is no evidence that he was involved in any capacity in the search of Allen's person. Tudryn Memo. Summ. J. at 3–4; Pl.'s Resp. Tudryn SOF ¶¶ 15, 33.

In response, Allen does not argue that Tudryn was involved in the search of Allen's person at any point. Instead, Allen posits that he was detained for too long a period, and as a result, the search of his *vehicle* was unlawful. Pl.'s Resp. Tudryn at 4–5 (emphasis added) (citing *Rodriguez v. United States*, 575 U.S. 348, 354–56 (2015); *United States v. Sanford,* 806 F.3d 954 (7th Cir. 2015)).

As an initial matter, as previously noted, Allen fails to address Officer Tudryn's argument that Officer Tudryn was not involved in the search of Allen's person and therefore waives any argument on this issue. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver."). Waiver aside, there is no evidence in the record that Officer Tudryn was involved in

the search of Allen. In fact, Allen admits that it was the Arresting Officers who searched him, not Officer Tudryn, and that he did not have any contact, interaction, or communication with Officer Tudryn during the traffic stop, or at any time thereafter. Pl.'s Resp. Tudryn SOF ¶¶ 14–15, 33. While this concession would appear to doom Allen's claim against Officer Tudryn, Allen maintains that Officer Tudryn's liability springs from his prolonging the search, beyond that reasonably necessary to give Allen a ticket. That contention, however, fails.

True, the United States Supreme Court has held that a police officer may not do anything that prolongs a traffic stop, absent reasonable suspicion ordinarily demanded to justify detaining an individual, and this includes a dog sniff. *See Rodriguez*, 575 U.S. at 354–56. But there is no evidence that Officer Tudryn prolonged the search. As an initial matter, Officer Tudryn was not the officer who initiated the stop. The undisputed evidence is that it was the Arresting Officers who stopped and arrested Allen. It is equally undisputed that it was the Arresting Officers who called Officer Tudryn to the scene to conduct a dog sniff. Put simply, there is no evidence that Officer Tudryn did anything to prolong the search.[5] Although Allen argues the dog sniff prolonged the traffic stop, he cites to no evidence in the record to support this argument, or case law contending a dog sniff was found to unreasonably

---

[5]For example, although Allen argues that Officer Tudryn "contributed to detaining Plaintiff for an extended unlawful period following the traffic stop[,]"Allen admits that the Arresting Officers conducted searches of him *before* Officer Tudryn arrived on scene, and that he was actually removed from the scene of the traffic stop, and taken to the Oak Lawn Police Department, during Officer Tudryn's search. Resp. at 2; Pl.'s Resp. Tudryn SOF ¶¶ 13–15. Thus, by Allen's own admissions, Officer Tudryn did not contribute to the length of the traffic stop. *See id.*

prolong a traffic stop under similar circumstances. Pl.'s Tudryn Resp. at 4–5; citing *Sanford*, 806 F.3d 954 (holding trooper's search of motor vehicle, which took approximately 27 minutes, was reasonable, under the Fourth Amendment). Here, in contrast, the record reflects–and Allen admits–that Tudryn was called to the scene only ten minutes after the traffic stop. Pl.'s Resp. Tudryn SOF ¶ 11. And the only two cases cited by Allen, *Rodriguez* and *Sanford*, do not compel a different conclusion as in each of those cases, the officers accused of prolonging the stop were the officers who initiated the traffic stop, not the K-9 officer.

Therefore, given Officer Tudryn's lack of involvement in the alleged unlawful search of Allen's person, no reasonable jury could find that he was liable under Section 1983. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (cleaned up) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). Thus, Officer Tudryn's motion for summary judgment as to Count I is granted.

## II. Unreasonable Search of Allen's Vehicle – Officer Tudryn (Count II)

Law enforcement may conduct a warrantless search of a vehicle if probable cause exists that the vehicle contains contraband, or evidence of a crime. *See Collins v. Virginia*, 138 S. Ct. 1663, 1669 (2018). The standard for probable cause is whether, "given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in" the vehicle. *United States v. Eymann*, 962 F.3d 273, 286 (7th Cir. 2020) (cleaned up). "When a police officer reasonably believes that a driver committed even a minor traffic offense, probable cause exists to support the

stop." *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014). So what happens when one officer comes onto the scene, following the initial stop, and the second officer called to the scene is involved in a subsequent vehicle search? Under the "collective knowledge doctrine," an officer may "stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts" that constitute probable cause. *U.S. v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). For the doctrine to apply, "(1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Id.* at 252–53. Under the "collective knowledge" doctrine, [t]here is no Fourth Amendment violation if the knowledge of the officer directing the stop…is sufficient to constitute probable cause." *Id.*

Officer Tudryn argues that he is entitled to summary judgment on Count II of Allen's complaint because his search of Allen's vehicle was supported by probable cause based upon the (1) collective knowledge doctrine and (2) Lary's alert to search the interior of Allen's vehicle. Tudryn Memo. Summ. J. at 5–7. Officer Tudryn posits that although he did not have personal knowledge to support reasonable suspicion and search of Allen's vehicle, he objectively relied upon the information provided by Detective McNeela for the search, namely that Allen was stopped because of a traffic infraction, and that his vehicle was involved in narcotic activity. Tudryn Memo. *Id.* at 4–6 (citing *United States v. Seay*, 2021 WL 6102994, at *2 (7th Cir. Dec. 22, 2021)

14

and *Patstone v. Reilley*, 2014 WL 4351086, at *6 (N.D. Ill. Sept. 2, 2014)). Based on this information, Officer Tudryn directed Lary to sniff the exterior of Allen's vehicle for the presence of drugs. *Id*. Lary then alerted to the presence of narcotics in several areas while sniffing the exterior of Allen's car. *Id*. at 6. Officer Tudryn then directed Lary to search the interior of the vehicle based on Lary's alerts. *Id*. A dog sniff conducted during a lawful traffic stop, asserts Officer Tudryn, is not a search and does not implicate the Fourth Amendment. *Id*. at 6–7 (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) and *United States v. Taylor,* 596 F. 3d 373, 377 (7th Cir. 2010)).

Alternatively, posits Officer Tudryn, he is entitled to summary judgment on the basis of qualified immunity because he had a reasonable and good faith belief that his search and seizure of Allen's car did not constitute a *per se* violation of Allen's Fourth Amendment based on the information conveyed to him by the arresting officers. Tudryn Memo. Summ. J. at 7–8.

In response, Allen argues that Officer Tudryn's motion should be denied because there was no probable cause to search the interior of his car with Lary. Pl.'s Tudryn Resp. at 6. Allen does not contest the dog sniff of the exterior of his car—aside from arguing that Officer Tudryn's search unlawfully prolonged the traffic stop, which the Court has rejected, *see* Section I, supra[6]—but rather contests that Lary did

---

[6]To the extent Allen challenges the dog sniff of the exterior of his vehicle as an unlawful search of his vehicle, the Supreme Court has determined that a dog sniff of the exterior of a vehicle during a lawful traffic stop does not rise to the level of any "constitutionally cognizable infringement." *See Caballes*, 543 U.S. at 409. Here, Allen has admitted that he was pulled over and subject to a traffic stop due to speeding and multiple traffic violations. Pl.'s Resp. Tudryn SOF ¶ 25. Thus, the dog sniff of the exterior of Allen's vehicle during a lawful traffic stop does not rise to the level of an unreasonable search of Allen's vehicle.

not alert during the dog sniff of the exterior of his car consistent with his training. *Id.* at 5–7. Turning to Officer Tudryn's argument that the search was protected by the collective knowledge doctrine, Allen disagrees, arguing that the doctrine requires officers communicate information and the factual basis for the search in advance of the search, and here, no officer has testified about what either Detective McNeela or Detective Heilig told Tudryn, if anything. *Id.* at 9. Allen contends that Officer Tudryn does not recite what "collective knowledge" he relied upon because there is no evidence of what he was actually told by the arresting officers. *Id. Patstone*, submits Allen, is distinguishable because in that case the K-9 officer received information that the driver of the vehicle was visibly under the influence of drugs during the traffic stop, which facts are absent here. *Id.* at 10; 2014 WL 4351086, at *4.

Admittedly, the record is unclear as to what exactly the Arresting Officers communicated to Officer Tudryn in advance of the dog sniff. However, under the collective knowledge doctrine, the Court looks not just to what Officer Tudryn knew, but what the Arresting Officers knew. Here, although Allen argues there was no reasonable suspicion that his vehicle was involved in narcotic activity, the record suggests otherwise; namely, Detective McNeela told Officer Tudryn that Allen's vehicle was involved in narcotic activity, and Detective Heilig smelled marijuana inside the vehicle. Tudryn SOF ¶¶ 21, 28. Allen purports to deny these facts, however his denials and citations to the record do not actually controvert the asserted fact. *See* Pl.'s Resp. SOF ¶ 21 ("Defendants omit that Ofc. Tudryn cannot recall if Ofc. McNeela provided any explanation as to why the vehicle was suspected of narcotic activity");

*id.* ¶ 28 ("Plaintiff specifically testified that no narcotics were in his vehicle. The Plaintiff does not smoke marijuana, does not allow people to smoke marijuana in his car, and the car is not used to transport marijuana.").

Ultimately, the Court finds Allen's focus on what Officer Tudryn recalled or what he was told by Detective McNeela misplaced. Officer Tudryn was able to rely upon what the Arresting Officers knew, and to impute that collective knowledge from the Arresting Officers to Officer Tudryn. *See United States v. Ledford*, 218 F.3d 684, 689 (7th Cir. 2000) (rejecting defendant's argument that the collective knowledge doctrine would only validate a search if there was evidence that the knowledge was communicated to the searching officers). That is, that Allen was involved in narcotic activity. On that basis, the Court finds, under the collective knowledge doctrine, that Officer Tudryn had probable cause to support the search the interior of Allen's vehicle.

Moreover, the record supports that Officer Tudryn's K-9 partner alerted to the presence of narcotics outside of Allen's vehicle during the dog sniff. Fourth Amendment precedent is clear that once a canine alerts to the presence of drugs, probable cause exists to search the vehicle. *Fla. v. Harris*, 568 U.S. 237, 246 (2013). For this independent reason, Officer Tudryn had probable cause to search the interior of Allen's vehicle. Allen's contention that whether Lary alerted or not is disputed by the record is not supported by the record itself. Officer Tudryn's testimony on the type of alerts Lary is trained to provide (which are broader than Allen submits), is consistent with the testimony given by Officer Tudryn on Lary's alerts during the dog

sniff of Allen's vehicle that he was trained to recognize. *See* Tudryn SOF ¶¶ 22–23. Allen provides no basis to question the description of the alerts by Lary, except to try to narrow them based on excerpts of parts of Tudryn's testimony. *See* Pl.'s Resp. Tudryn SOF ¶¶ 22–23. Further, there is no dispute that Officer Tudryn, and Lary, are trained and certified in narcotics detection and patrol. Pl.'s Resp. Tudryn SOF ¶ 18. Tudryn also testified that Lary alerted to specific areas on the exterior of the vehicle, and to the interior of the vehicle. Tudryn SOF ¶¶ 22–23. Although Tudryn could not recall the specifics on the nature of Lary's alerts, this is not the same as not recalling Lary alerted, or that Lary did not alert at all, and the Court finds this does not create any genuine issue of material fact. Allen does not contest Tudryn or Lary's training or testing standards, or provide any contrary testimony from any witness or an expert, to challenge Lary's alerts. The Court finds that Allen has failed to identify any genuine dispute of material fact regarding the reasonableness of the search of his vehicle.

For the foregoing reasons, Officer Tudryn's motion for summary judgment on Count II is granted.[7]

---

[7]To the extent Tudryn argues qualified immunity applies, the Court does not reach that argument to resolve his motion for summary judgment as to Count I and Count II against him, based on the Court's findings in his favor.

### III. Unreasonable Search of Allen's Person – Advocate Defendants (Count I)[8]

As previously noted, the Fourth Amendment "protects citizens against unreasonable searches and seizures by the government; it does not apply to searches or seizures conducted by private individuals, no matter how unreasonable." *U.S. v. Hudson*, 86 F.4th 806, 810 (7th Cir. 2023) (cleaned up). "[T]o be characterized as state action, the deprivation of constitutional rights must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible and the party charged with the deprivation must be the person who may fairly be said to be a State actor." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). *Id.* (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

Some situations where "private conduct takes on the color of law" include "when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that

---

[8]Allen's Complaint lists "all individual known and unknown Defendants and others" in Count I. First Am. Compl., Count I. Presumably, this includes Advocate itself. However, in their Motion, the Advocate Defendants focus on this Count as to Dr. Lorenz and Dr. Napier only, and not Advocate itself. To the extent Advocate is taking a position on whether or not it is liable for the actions of Dr. Lorenz or Dr. Napier under Count I, the Court finds those arguments undeveloped and waived. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (cleaned up). The same is true for Count IV, which also names Advocate.

seemingly private behavior reasonably may be treated as that of the state itself." *Hallinan*, 570 F. 3d at 815–16 (cleaned up).

The Advocate Defendants argue, as an initial matter, that Allen fails to allege, and much less establish, that Dr. Lorenz or Dr. Napier—private medical providers employed by Advocate—were acting under color of state law when they searched Allen. Advocate Defs.' Memo. Summ. J. at 3–4. More substantively, the Advocate Defendants contend that Allen has not demonstrated that the medical examination conducted by Dr. Lorenz and Dr. Napier was an illegal search, as Allen was (1) in the custody of the Oak Lawn Police at the time of the search and (2) officers were concerned he had placed drugs in his rectum, and by doing so he was at risk of serious bodily harm or even death while in custody. *Id.* at 4. Last, the Advocate Defendants assert the search was performed by a doctor under the direction of another doctor and "[t]he only purpose of their examination, according to both physicians, was to determine whether the patient was in serious danger as a result of dangerous drugs secreted in his rectum[,]" and not to pursue evidence, and that Allen consented and cooperated during the search. *Id.*

Allen counters, as a preliminary matter, that summary judgment is not the time to contest a pleading issue, e.g. that Allen failed to allege Dr. Lorenz and Dr. Napier were "acting under color of law" in his complaint. Pl.'s Advocate Resp. at 2, 7–8. On the merits, Allen contends the record supports that the doctors were acting under color of state law where the officers had Allen in custody, transported him to the hospital, and "essentially encouraged and directed the medical defendants to

20

undertake a highly intrusive digital body cavity exam and x-rays." *Id.* at 6. Allen cites several out-of-district opinions to support his argument that similar cases have found medical defendants to have acted under color of law. *Id.*

The Court agrees with Allen that summary judgment is not the time to test the sufficiency of the allegations, as suggested by the Advocate Defendants. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (cleaned up) ("Summary judgment is the 'put up or shut up' moment in a lawsuit. Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'")

Turning to the Advocate Defendants' substantive argument, the Court finds that there are genuine issues of material fact concerning whether Dr. Lorenz and Dr. Napier were acting under color of law. Specifically, Dr. Lorenz and Dr. Napier were working in the Emergency Department when Allen was brought in by the officers. Dr. Lorenz was the primary physician treating Allen, with Dr. Napier directly supervising. Advocate Defs.' SOF ¶ 18. The medical records reflect that a conversation took place between Dr. Lorenz and the Arresting Officers, who informed him of their concern that Allen had drugs in his rectum. Pl.'s Advocate SOAF ¶ 2. Although the Advocate Defendants argue that the Arresting Officers did not direct or encourage Dr. Lorenz or Dr. Napier to perform a digital rectal exam, body cavity search or x-ray of Allen, viewing the facts in the light most favorable to Allen, it is reasonable to infer that Dr. Lorenz conducted the medical examinations not on the

basis of any medical necessity, but rather based upon the Arresting Officers' request to conduct the physical exam of Allen for the purpose of retrieving the suspected contraband. To that end, there is no evidence that Allen exhibited any symptoms that warranted the digital rectal exam or x-ray, outside of what the Arresting Officers told the physicians. Further, when Allen was asked by the physicians whether he had drugs on his person, he said no. For the foregoing reasons, and based upon the contested facts in the record relating to how the medical examinations unfolded, the Court cannot, on the record before it, accept the Advocate Defendants' contention that the examination of Allen was conducted only because of medical necessity. It is for the trier of fact to resolve whether Dr. Lorenz and Dr. Napier were acting in the care of their own medical judgment, or on behalf of police, under the circumstances.

All in all, the Court finds there is evidence in the record supporting the inference that the search was driven, in part, by the Arresting Officers that brought Allen to the hospital such that the Advocate Defendants can be treated as the state itself. *See Hallinan*, 570 F.3d at 815–16. Although Dr. Lorenz and Dr. Napier's testimony supports that the searches were made in their medical judgment and not pursuant to a police request, the medical judgment was largely informed by what the police officers told them. *See, e.g.*, Lorenz Dep. Tr. at 42:1—4 ("The police's concern that he had a foreign body in his rectum led me to make the decision to perform an x-ray and perform a digital rectal exam.") Thus, based on the contested facts, it is not a scenario where the Court is able to find that it was a medical examination based on medical judgment alone, or a search based on police request or direction, and the

Advocate Defendants fail to cite a case suggesting under these circumstances summary judgment is appropriate.

On the foregoing bases, the Court denies the Advocate Defendants motion for summary judgment on Count I of Allen's complaint.

## IV. Medical Battery – Advocate Defendants (Count IV)

In Count IV, Allen alleges that the Advocate Defendants committed an "unauthorized and offensive touching" when they performed the examination without his consent. First Am. Compl. ¶¶ 45–46.

Under Illinois law, a battery is the unauthorized touching of the person of another. *Curtis v. Jaskey*, 759 N.E. 2d 962, 964 (Ill. App. Ct. 2001) (cleaned up). In a medical battery case, a plaintiff may recover for a medical battery if he or she shows "a total lack of consent to the procedure performed, that the treatment was contrary to the patient's will, or that the treatment was at substantial variance with the consent granted." *Id*.

The Advocate Defendants argue that the only touching involved in this case was via a proper medical examination. Advocate Defs.' Memo. Summ. J. at 4. The Advocate Defendants maintain that the examination of Allen was conducted pursuant to his express consent and therefore, does not constitute an unauthorized offensive touching. *Id*. Next, and somewhat confusingly, the Advocate Defendants contend, without citation to any pertinent authority, that Allen's claim for battery requires evidence that Dr. Lorenz and Dr. Napier violated the medical standard of case in performing the examination of Allen. *Id*. at 4–5. Therefore, reason the

23

Advocate Defendants, Allen is required to adduce evidence that they violated the standard of care through expert testimony, which Allen has not done, citing *McDonald v. Lipov*, 13 N.E.3d 179 (Ill. App. Ct. 2014) and *Andrews v. Northwestern Memorial Hospital*, 540 N.E. 2d 447 (Ill. App. Ct. 1989). *Id.* at 5.

Predictably, Allen disagrees and insists that his claim is not one for medical negligence or "healing arts malpractice" but one for battery under Illinois law. Pl.'s Advocate Resp. at 10 (citing *Lojuk v. Quandt*, 706 F. 2d 1456, 1460 (7th Cir. 1983)). The Court agrees with Allen.

In evaluating the evidentiary record and the requirements for a battery, the Court finds that the parties fundamentally dispute whether there was consent by Allen in advance of the medical examination and x-ray conducted by the physicians at Advocate. Allen insists he did not consent in any manner, whereas the Advocate Defendants contend they obtained Allen's consent. *See* Advocate Defs. SOF ¶¶ 24–27, 29–30, 46–47; Pl.'s Resp. Advocate SOF ¶¶ 24–27, 29–30, 46–47. However, the Advocate Defendants do not identify any documentation that supports their contention that Allen's consent was obtained prior to their medical examinations, for example in a written consent form. *See id.* Whether Allen consented or not to the medical examinations is the quintessential factual dispute to be resolved by the trier of fact. Therefore, the Advocate Defendants' motion for summary judgment on Count IV is denied.[9]

---

[9]The Advocate Defendants make an argument, in passing, that Allen had no physical contact with Dr. Napier and was only examined by Dr. Lorenz. Memo. Summ. J. at 4. However, the Advocate Defendants submit that Dr. Lorenz was working under the supervision of Dr. Napier. Advocate Defs.' SOF ¶ 18. Whether, and to what extent, Dr. Napier was involved in

**Conclusion**

For the foregoing reasons, Tudryn's motion for summary judgment [87] is granted and the Advocate Defendants' motion for summary judgment [84] is denied. Tudryn is terminated from this case. By January 5, 2024, the Advocate Defendants and Allen are instructed to submit a joint status report indicating: (1) whether the parties would like a referral to the Magistrate Judge for a settlement conference; (2) whether the parties consent to proceeding with trial before the Magistrate Judge, (3) whether the parties consent to a bench trial, (4) the anticipated number of days for trial (accounting for *voir dire*), (5) the expected number of witnesses.

Dated: December 22, 2023

United States District Judge
Franklin U. Valderrama

---

supervising or directing the medical examination or x-ray performed by Dr. Lorenz will also be a matter for resolution by the trier of fact.